**FILED - GR**

August 20, 2007 3:56 PM

RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY_____ / _____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

J.J.B. HILLIARD, W.L. LYONS, INC,

Plaintiff,

v.

KEVIN H. CLARK, CARLA A.
MASSELINK, BRYAN ZICHTERMAN,
DANIEL M. KLEINHEKSEL, MARK L.
ZICHTERMAN, THOMAS BOSCH, SARAH
CLARK, DAWN PHILLIPS, TINA JUNIOR,
JILL KONING, KATHY MUOIO AND THE
LAKESHORE GROUP,

Defendants.

_____/

Case No.

HONORABLE

**1:07-cv- 811**

Paul L Maloney - US District Judge

**COMPLAINT FOR INJUNCTIVE
RELIEF**

Scott E. Dwyer (P33131)
Eric S. Richards (P40338)
Brian M. Andrew (P58791)
Mika Meyers Beckett & Jones PLC
Attorneys for Plaintiff
900 Monroe Ave., N.W.
Grand Rapids, MI 49503
(616) 632-8000

_____/

Now comes Plaintiff J.J.B. Hilliard, W.L. Lyons, Inc. ("Hilliard Lyons"), by and through its

attorneys, Mika Meyers Beckett & Jones PLC, and for its Complaint against Kevin H. Clark, Carla

A. Masselink, Bryan Zichterman, Daniel M. Kleinheksel, Mark L. Zichterman, Thomas Bosch,

Sarah Clark, Dawn Phillips, Tina Junior, Jill Koning, Kathy Muoio, and The Lakeshore Group,

states as follows:

## NATURE OF ACTION AND RELIEF REQUESTED

1.     Defendants Kevin H. Clark, Carla A. Masselink, Bryan Zichterman, Daniel M. Kleinheksel, Mark L. Zichterman, Thomas Bosch, Sarah Clark, Dawn Phillips, Tina Junior, Jill Koning, and Kathy Muoio (collectively, the "Team Defendants") are former employees of Hilliard Lyons who worked in Hilliard's Holland, Michigan, office. On August 10, 2007, the Team Defendants resigned – in unison – from Hilliard Lyons and immediately began their employment with Raymond James & Associates, Inc. ("Raymond James"). Raymond James is a direct competitor of Hilliard Lyons in the financial services industry, but had no office in Holland, Michigan until it orchestrated the defection of the Team Defendants from Hilliard Lyons.

2.     Since their resignation, the Team Defendants have used confidential trade secret information obtained from Hilliard Lyons to engage in a campaign to solicit Hilliard Lyons' clients to leave Hilliard Lyons and take their business to Raymond James. This solicitation campaign relies on the improper use of confidential business and client information to which the Team Defendants had access during their employment with Hilliard Lyons. The Team Defendants' conduct violates both applicable common law and the agreements the Team Defendants have with Hilliard Lyons that prohibit such solicitation and use of confidential information.

3.     Hilliard Lyons seeks an order directing the Team Defendants to return Hilliard Lyons' confidential and proprietary business records and client files immediately and a temporary restraining order, preliminary injunction, and permanent injunction: (i) prohibiting the Team Defendants from using any of Hilliard's confidential information; (ii) prohibiting the Team Defendants from contacting Hilliard's clients in violation of their agreements; and (iii) enforcing the valid and reasonable non-competition agreements signed by the Team Defendants.

2

## PARTIES AND JURISDICTION

4.      Hilliard Lyons is a Kentucky corporation authorized to do business in Michigan and that conducts business in Ottawa County, Michigan. Hilliard Lyons is a wholly-owned subsidiary of The PNC Financial Services Group,. Inc. ("PNC").

5.      Defendant Kevin H. Clark began working for Hilliard Lyons on or around October 23, 1992. Clark worked in Hilliard Lyons' Holland office as a financial advisor until he resigned with the other Team Defendants on August 10, 2007. In the course of his employment, Clark signed a partnership agreement with Hilliard Lyons containing non-solicitation provisions that Clark has violated and that form the basis of this Complaint. A true and correct copy of the partnership agreement is attached at Exhibit 1.

6.      Defendant Carla A. Masselink also began working for Hilliard on or around October 23, 1992. Masselink worked in Hilliard Lyons' Holland office as a financial advisor until she resigned with the other Team Defendants on August 10, 2007. In the course of her employment, Masselink signed a partnership agreement with Hilliard Lyons containing non-solicitation provisions that Masselink has violated and that form the basis of this Complaint. A true and correct copy of the partnership agreement is attached at Exhibit 1.

7.      Defendant Bryan Zichterman began working for Hilliard Lyons on or around November 13, 1998. Bryan Zichterman worked in Hilliard Lyons' Holland office as a financial advisor until he resigned with the other Team Defendants on August 10, 2007. In the course of his employment, Bryan Zichterman signed an agreement with Hilliard Lyons containing non-solicitation, non-competition, and non-disclosure provisions that Zichterman has violated and that form the basis of this Complaint. A true and correct copy of Zichterman's agreement is attached at Exhibit 2. Bryan Zichterman also signed the partnership agreement, which contained separate non-solicitation provisions.

3

8.      Defendant Daniel M. Kleinheksel began working for Hilliard on or around October 9, 1996.  Kleinheksel worked in Hilliard Lyons' Holland office as a financial advisor until he resigned with the other Team Defendants on August 10, 2007.  In the course of his employment, Kleinheksel signed an agreement with Hilliard Lyons containing non-solicitation, non-competition, and non-disclosure provisions that Kleinheksel has violated and that form the basis of this Complaint.  A true and correct copy of Kleinheksel's agreement is attached at Exhibit 3.

9.      Defendant Mark L. Zichterman began working for Hilliard Lyons on or around April 17, 2003.  Mark Zichterman worked in Hilliard Lyons' Holland office as a financial advisor until he resigned with the other Team Defendants on August 10, 2007.  In the course of his employment, Mark Zichterman signed an agreement with Hilliard Lyons containing non-solicitation, non-competition, and non-disclosure provisions that Zichterman has violated and that form the basis of this Complaint.  A true and correct copy of Zichterman's agreement is attached at Exhibit 4.

10.     Defendant Thomas Bosch began working for Hilliard Lyons on or around September 2, 2004.  Thomas Bosch worked in Hilliard Lyons' Holland office as a financial advisor until he resigned with the other Team Defendants on August 10, 2007.  In the course of his employment, Bosch signed an agreement with Hilliard Lyons containing non-solicitation, non-competition, and non-disclosure provisions that Bosch has violated and that form the basis of this Complaint.  A true and correct copy of Bosch's agreement is attached at Exhibit 5.

11.     Defendant Sarah Clark began working for Hilliard Lyons on or around January 21, 2005.  Clark worked in Hilliard Lyons' Holland office as a financial advisor until she resigned with the other Team Defendants on August 10, 2007.  In the course of her employment, Clark signed an agreement with Hilliard Lyons containing non-solicitation, non-competition, and non-disclosure

provisions that Clark has violated and that form the basis of this Complaint. A true and correct copy of Clark's agreement is attached at Exhibit 6.

12.     Defendant Dawn Philips began working for Hilliard Lyons on or around September 4, 2002. Phillips worked in Hilliard Lyons' Holland office as a sales assistant until she resigned with the other Team Defendants on August 10, 2007.

13.     Defendants Tina Junior, Jill Koning, and Kathy Muoio worked in Hilliard Lyons' Holland office as sales assistants until they resigned with the other Team Defendants on August 10, 2007.

14.     The Team Defendants are presently operating under the name "The Lakeshore Group."

15.     This Court has jurisdiction over this Court under 28 U.S.C. § 1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     Venue is appropriate because all of the parties reside or transact business in this judicial district and the events giving rise to this Complaint occurred in this district.

## GENERAL ALLEGATIONS

17.     Hilliard Lyons is a leading financial services firm that offers its clients sophisticated wealth management services and for which it is paid a commission fee.

18.     The Team Defendants were, until their orchestrated resignations, employed by Hilliard Lyons at its Holland office and worked with individual customers of Hilliard Lyons in providing financial services.

19.     As a group, the Team Defendants generated combined annual commissions of approximately $3,469,000 in the past 12 months, representing approximately 55% of the total revenue generated in Hilliard Lyons' Holland office. At the time of their departure, the Team

Defendants had total assets under management of approximately $453,000,000.00, representing approximately 57% of the assets managed at the Holland branch. Collectively, the Team Defendants serviced approximately 3,500 households.

20.     The Team Defendants worked together as an informal team for several years.

21.     In December, 2006, the Team defendants formalized their group structure by entering into a formal partnership agreement between themselves and Hilliard Lyons. (the "Partnership Agreement"). (*See* Ex. 1.)

22.     In January, 2007, the Team Defendants formally merged the entire group's business into one production number at Hilliard Lyons. The effect of these moves was to formalize in every material way that the Team Defendants were operating as a single group and to facilitate their ability to move Hilliard Lyons' customers to another brokerage firm.

23.     The Partnership Agreement signed by Defendants Kevin Clark, Carla Masselink, Bryan Zichterman, and Daniel Kleinheksel contains confidentiality and non-solicitation provisions. Specifically, the Team Defendants acknowledged the confidential nature of the customer information the Team Defendants received as employees of Hilliard Lyons:

> The team members recognize and agree that all records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained herein, including names, addresses, telephone numbers, and financial information ("Information") . . . [are] confidential and the sole and exclusive property of the Firm . . . .

24.     Furthermore, the Team Defendants who are signatories to the Partnership Agreement promised not to solicit customers from Hilliard Lyons for a period of one year after leaving the firm:

> This agreement "not to solicit" means that the [signatories], will not, during their employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever for the purpose of inviting, encouraging or requesting any such [customer] account to transfer from the Firm to them or to their new employer, or to open a new account with them or with their new employer, or to otherwise discontinue such accounts patronage and business relationship with the Firm or the other Managing Partners or Voting Partners.

6

25. Similarly, in connection with their employment at Hilliard Lyons, Defendants Bryan

Zichterman, Mark Zichterman, Kevin Kleinheksel, Thomas Bosch, and Sarah Clark each signed

separate but identical Trainee Agreements with Hilliard Lyons. (*See* Ex. 2-6.)

26. Among other provisions, the Trainee Agreement each signed contained the following

non-solicitation and non-competition language:

2. For a period of one year from the date of termination of my employment with
Hilliard-Lyons at any time and for any reason whatsoever, I will not solicit
investment business from any client of Hilliard-Lyons whom I served or whose name
became known to me while I was employed by Hilliard-Lyons; nor will I contact
such clients to advise them that I have secured employment with another brokerage
or advise, suggest or invite such clients to transfer their accounts or do business with
that brokerage firm. I further agree that for a period of six months after termination
of my employment with Hilliard-Lyons at any time and for any reason whatsoever, I
will not in the county in which the Hilliard-Lyons office where I am or was
employed, or any county contiguous thereto, either solicit investment business from
any party or work for or in any manner assist a competitor of Hilliard-Lyons.

27. In addition, the Trainee Agreement contains the following confidentiality and non-

disclosure provision:

3. I understand and agree that any and all records and files of Hilliard-Lyons and all
copies thereof, including the names and addresses of its clients, are, and shall remain,
the confidential property of Hilliard-Lyons at all times, both during my employment
and after termination of my employment for any reason whatsoever. None of such
records nor any part of them is to be removed from Hilliard-Lyons premises either in
original form or in duplicated or copied form. It is expressly agreed and understood
that this applies to clients assigned to me by Hilliard-Lyons and also to clients whom
I may maintain while in the employment of Hilliard-Lyons.

28. Each of the Defendants who signed a Trainee Agreement also acknowledged that

Hilliard-Lyons would suffer irreparable harm if these provisions of the Trainee Agreement were

violated and consented to injunctive relief enforcing these provisions:

4. I understand that if the provisions of paragraph 2 or 3 are violated by me, Hilliard-
Lyons will suffer irreparable harm and accordingly will be entitled to injunctive
relief enforcing this provision. I consent to the issuance of a temporary restraining
order or a preliminary or permanent injunction to prohibit the breach of any
provision of this contract, or to maintain the status quo pending the outcome of any

arbitration proceeding which may be initiated. In addition, I will be liable to Hilliard-Lyons for any and all damages caused thereby.

29. As a condition of their employment with Hilliard Lyons, All of the defendants were

required to read, acknowledge and comply with the terms of the PNC / Hilliard Lyons "Code of

Ethics" and "PNC Employee Conduct Policies" (attached as Exhibit 7 (Code of Ethics) and Exhibit

8 (Employee Conduct Policies), respectively).

30. The PNC Employee Conduct Policies document states, in pertinent part, that:

As an employee of PNC, you are expected to protect PNC Confidential Information from unauthorized access and disclosure and use it only as directed, for the benefit of PNC . . . .

Confidentiality is a fundamental principle at PNC. While employed by PNC, you may learn of or have access to information about PNC, and/or its customers, clients, shareholders, directors, employees and suppliers. You should assume that all information learned on the job is Confidential. You must use Confidential Information only for legitimate purposes and prevent its unauthorized disclosure. . . .

Never use Confidential Information for personal financial gain or to compete with PNC....

31. Defendants received, acknowledged, and agreed to comply with these policies. Their

signed acknowledgments are attached as Exhibit 7.

32. Additionally, Paragraph No. 3 of the Hilliard Lyons Investment Broker Trainee

Agreement states:

I understand and agree that any and all records and files of Hilliard-Lyons and all copies thereof, including the names and addresses of its clients, are, and shall remain, the confidential property of Hilliard-Lyons at all times, both during my employment and after termination of my employment for any reason whatsoever. None of such records nor any part of them is to be removed from Hilliard Lyons' premises either in original form or in duplicated or copied form. It is expressly agreed and understood that this applies to clients assigned to me by Hilliard Lyons and also to clients whom I may obtain while in the employment of Hilliard Lyons. (See Exhibit "A").

33. On August 10, 2007, the Team Defendants resigned *en masse* and without any prior

warning.

8

34. The Team Defendants timed their departure to occur on the eve of a pre-planned 10-day vacation trip by the branch office manager. The Team Defendants knew that this would further hamper Hilliard Lyons' ability to retain its customers and respond to Defendants' violations.

35. The Team Defendants immediately took up residence across the street (about 200 yards away) from Hilliard Lyons' Holland branch office and opened an office on behalf of Raymond James & Associates, Inc. ("Raymond James"). Raymond James is a nationwide brokerage firm and a direct competitor of Hilliard Lyons'. Prior to the opening of the Team Defendants' new branch office across the street from Hilliard Lyons, Raymond James had no branch office location in the Holland area.

36. Immediately after their resignations, Hilliard Lyons learned that its customers had received phone calls, letters, and other correspondence from the Team Defendants asking them to move their business to "The Lakeshore Group of Raymond James & Associates, Inc."

37. The Team Defendants sent out written solicitation packets to customers the same day they left Hilliard Lyons. A copy of one such solicitation a letter dated August 10, 2007, is attached as Exhibit 10. This solicitation states, among other things, that the "entire" group had left Hilliard Lyons and that nothing apart from a "name change" had occurred with respect to the entity entrusted with the accounts of customers who received the letter.

38. This misrepresentation has confused many Hilliard Lyons customers, who have indicated that, as a result of the letter, they were unsure as to whether Hilliard Lyons' Holland branch was still operating. This confusion was exacerbated by references in the solicitation letter to the "automatic" transfer of customer accounts to Raymond James.

39. Accompanying the solicitation letter is a package of information about the Team Defendants' new business, and an ACAT (customer account transfer form) with confidential

9

customer information already printed on the form. The Team Defendants requested that the customers complete the form and return to the Team Defendants for processing. Hilliard Lyons believes that similar solicitation letters have been sent to all 3,500 households formerly serviced by the Team Defendants.

40.     Upon information and belief, some or all of the Team Defendants were making an unusual amount of copies of customer statements and related information shortly before their resignation. The Team Defendants needed this confidential information of Hilliard Lyons' to send out a mass solicitation mailing to over 3,500 customers.

41.     In the months preceding their departure, the Team Defendants were selling many of their customers out of a Hilliard Lyons-sponsored proprietary fund known as SENBANC. This fund did not have a selling agreement with Raymond James, so the Team Defendants would not have been able to fully service these customers at their new firm, Raymond James, unless they first sold the customers out of the SENBANC positions. During this time, Raymond James also contacted Hilliard Lyons about the possibility of obtaining a selling agreement with SENBANC in anticipation of the Team Defendants' imminent departure to Raymond James

42.     Defendant Dawn Phillips left behind a Raymond James Verification of Employment document. This document is dated June 5, 2007, which is over two months before the Team Defendants resigned on August 10, 2007.

43.     The Team Defendants were planning their exist from Hilliard Lyons for more than two months, during which time they copied Hilliard Lyons' confidential documents, sold clients out of Hilliard Lyons' proprietary products, and attempted to catch Hilliard Lyons by surprise in an effort to transfer the accounts they served at Hilliard Lyons in violation of their agreements.

44.     The Team Defendants' solicitation of Hilliard Lyons' customers using Hilliard Lyons' confidential information is a clear violation of the restrictive covenants in the agreements they signed.

45.     The Team Defendants' removal and use of confidential client information from Hilliard Lyons is a violation of the common law and the agreements between the parties.

46.     The Team Defendants' competition against Hilliard Lyons is a violation of the restrictive covenants in the agreements they signed.

47.     Hilliard Lyons' counsel notified counsel for the Team Defendants that their actions are in violation of these agreements.  The Team Defendants, however, have refused to cease their improper conduct.

48.     As a result, Hilliard Lyons was forced to initiate this action and seek preliminary injunctive relief to maintain the *status quo* and prevent further harm until the parties can resolve their dispute in the arbitration.

## COUNT I - CONVERSION

49.     Hilliard Lyons incorporates herein the allegations set forth above.

50.     Hilliard Lyons' confidential business information constitutes valuable property belonging to Hilliard Lyons that was entrusted to the Team Defendants.

51.     The Team Defendants have used and converted for their own benefit the property of Hilliard Lyons without permission, knowing that it was the property of Hilliard Lyons and knowing that the taking/use was unauthorized.

52.     As a direct and proximate cause of Defendants' misconduct, Hilliard Lyons has been damaged.

## COUNT II — BREACH OF CONTRACT

53.     Hilliard Lyons incorporates herein the allegations set forth above.

54.     The various agreements described herein prohibit, *inter alia*, the Team Defendants from, among other things: (i) soliciting clients of Hilliard Lyons for twelve (12) months after the termination of their employment with Hilliard Lyons, (ii) retaining or using confidential or trade secret information to compete with Hilliard Lyons; and (iii) competing against Hilliard Lyons in the counties of Ottawa, Allegan, Kent, or Muskegon, Michigan (the "Prohibited Counties") for six (6) months after the termination of their employment with Hilliard Lyons.

55.     The Team Defendants breached their obligations to Hilliard Lyons under the agreements by, among other things: (i) soliciting clients of Hilliard Lyons within hours of their resignation from employment with Hilliard Lyons, (ii) retaining and using confidential or trade secret information to compete with Hilliard Lyons; and (iii) competing against Hilliard Lyons in the Prohibited Counties.

56.     Hilliard Lyons performed all its obligations to the Team Defendants under the various agreements described herein.

57.     The breaches by the Team Defendants are causing and will continue to cause Hilliard Lyons to suffer harm to its business.

58.     Hilliard Lyons has been damaged as a result of the Team Defendants' conduct and breaches of the agreements described herein.

59.     Hilliard Lyons is entitled to specific performance of the agreements and requests that the Court enforce the agreements' provisions.

## COUNT III — BREACH OF FIDUCIARY DUTY

60.     Hilliard Lyons incorporates herein the allegations set forth above.

61.     The Team Defendants each acted as a fiduciary to Hilliard Lyons.

62.     The Team Defendants each owed Hilliard Lyons fiduciary duties of undivided loyalty while employees of Hilliard Lyons.

63.     Upon information and belief, each of the Team Defendants breached their fiduciary duties to Hilliard Lyons by improperly using Hilliard's confidential business records, client files, and information while employed at Hilliard Lyons for the benefit of themselves and Raymond James, and by interfering with and misappropriating Hilliard Lyons' client relationships as employees of Raymond James.

64.     Hilliard Lyons has been damaged as a result of the Team Defendants' conduct in an amount to be proven at arbitration.

65.     The Team Defendants' breach of their fiduciary duties are a cause of Hilliard Lyons' damages.

## COUNT IV — MISAPPROPRIATION OF TRADE SECRETS

66.     Hilliard Lyons incorporates herein the allegations set forth above.

67.     The Team Defendants have willfully and maliciously misappropriated or will inevitably use Hilliard Lyons' confidential and proprietary or other information that afforded Hilliard Lyons a commercial advantage.

68.     Such confidential and proprietary information is not known outside of Hilliard Lyons' business, is only known by employees and others involved in Hilliard Lyons' business, and is subject to measures to guard the secrecy of the information. The information has been developed with a substantial amount of effort and investment and cannot readily be acquired or duplicated by others. Further, the information is valuable to Hilliard Lyons as it gives it a competitive advantage and thus would be valuable to Hilliard Lyons' competitors.

69.     The Team Defendants used, or will inevitably use, this confidential and proprietary information in breach of an agreement, confidence or duty, or as a result of discovery by improper means.

70.     Hilliard Lyons has been damaged as a result of the Team Defendants' conduct.

71.    The Team Defendants are in violation of Michigan's Uniform Trade Secrets Act.

72.    Hilliard Lyons has been damaged as a result of Defendants' conduct.

## COUNT V — TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

73.    Hilliard Lyons incorporates herein the allegations set forth above.

74.    Hilliard Lyons had contracts or business relationships or expectancies with third parties, including, without limitation, customers of Hilliard Lyons and other employees of Hilliard Lyons.

75.    The Team Defendants had knowledge of the contracts or business relationships or expectancies.

76.    The Team Defendants have intentionally or improperly interfered with the contracts, business relationships or expectancies, inducing or causing their breach, disruption or termination.

77.    Hilliard Lyons has been damaged as a result of the Team Defendants' intentional or otherwise improper interference with its contracts or business relationships or expectances with the third parties.

## COUNT VI – UNFAIR COMPETITION

78.    Hilliard Lyons incorporates herein the allegations set forth above.

79.    The conduct of the Team Defendants including, without limitation, the Team Defendants' *en masse* departure from Hilliard Lyons, their solicitation of Hilliard Lyons' customer to their benefit and the benefit of Raymond James, and their competition against Hilliard Lyons constitutes unfair competition under Michigan law.

80.    As a direct and proximate result of the Team Defendants' unfair competition, Hilliard Lyons has suffered and shall continue to suffer significant damages and financial loss.

WHEREFORE, Hilliard Lyons respectfully requests this Court to enter judgment against Defendants, jointly and severally, in its favor as follows:

(a)     Granting Hilliard Lyons damages in an amount to be determined by the Court, together with pre-judgment and post-judgment interest;

(b)     Ordering that the Team Defendants return to Hilliard Lyons, any and all business records or documents containing Hilliard Lyons confidential information, including but not limited Hilliard Lyons' client files, client lists, account lists, documents, or other files, or other documents reflecting confidential Hilliard Lyons client information, removed from Hilliard Lyons' offices or taken from Hilliard Lyons' protected computer system, that are in the Team Defendants' possession, custody, or control, or in the possession, custody or control of their lawyers, agents, family members, friends, or any other person or entities acting on their behalf;

(c)     Entering a temporary restraining order, and preliminary and permanent injunctions:

(i)     enjoining Team Defendants and any other person or entity acting on Team Defendants' behalf from retaining, using, referring to or divulging information contained in Hilliard Lyons' business records or documents containing Hilliard Lyons' confidential information, including but not limited to Hilliard Lyons' client files, electronic information downloaded from any Hilliard Lyons computer, client lists, documents, or other files, and all documents, computer files, diskettes or information which the Team Defendants may have created there from;

(ii)     enjoining the Team Defendants and any other person or entity acting on their behalf from, directly or indirectly, soliciting or initiating any further contact with any clients, customers, suppliers, or other persons or entities that were serviced by the Team Defendants or whose names became known to the Team Defendants by virtue of their employment with Hilliard Lyons or from otherwise interfering with the relationship between Hilliard Lyons and such clients, customers, suppliers, or other persons or entities, and from encouraging or aiding anyone from doing the same until August 10, 2008;

15

(iii)  enjoining the Team Defendants from both maintaining an office in the Prohibited Counties or competing , directly or indirectly, against Hilliard Lyons in the Prohibited Counties until February 8, 2008;

(d)  Directing Team Defendants to pay Hilliard Lyons' legal fees and costs incurred in prosecuting this action; and

(e)  Granting to Hilliard Lyons such other and further relief as may to the Court seem just, proper, and equitable.

Respectfully submitted,

MIKA MEYERS BECKETT & JONES PLC
Attorneys for Plaintiff

Dated: _8/26/17_

By: _____
Scott E. Dwyer (P33131)
Eric S. Richards (P40338)
Brian M. Andrew (P58791)
900 Monroe Ave., N.W.
Grand Rapids, MI 49503
(616) 632-8000